UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL KENNEDY *and* FERRELL WELCH,
    *Plaintiffs*,

    v.

SUPREME FOREST PRODUCTS, INC., *and* SUPREME INDUSTRIES, INC.,
    *Defendants*.

No. 3:14-cv-01851 (JAM)

**RULING GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    Plaintiffs Michael Kennedy and Ferrell Welch are two truck drivers who allege that they were fired from their jobs because they complained about having to drive trucks that were overloaded in violation of the federal Surface Transportation Assistance Act, 49 U.S.C. § 31105. Defendants have moved for summary judgment. For the reasons set forth below, I conclude that summary judgment should be granted against plaintiff Welch but that genuine issues of fact remain that should allow Kennedy's claim to proceed to trial.

**BACKGROUND**

    The following facts are undisputed or, if disputed, are presented in the light most favorable to the plaintiffs as the non-moving parties. For several years leading up to 2014, plaintiffs Michael Kennedy and Ferrell Welch were employed as licensed commercial truck drivers. They hauled significant quantities of mulch for defendants Supreme Forest Products, Inc. and Supreme Industries, Inc.

    Sometime in 2013, defendants began attempting to squeeze more material—up to 70 cubic yards—into their delivery trucks, and quite a few drivers complained that the trucks were overweight. Doc. #77-10 at 22–24. The change in policy resulted in defendants' regularly

1

sending out trucks loaded beyond the federal legal weight limit of 80,000 pounds. *See, e.g,* Doc. #77-14 (dozens of weight slips showing more than 80,000 pound gross weight for products including sand and wood chips).

Plaintiff Welch began complaining about being asked to drive trucks that were too heavy. Doc. #77-9 at 263. Around the same time, he also began complaining that he was not getting enough work hours. *Id.* at 258–64. Ultimately, in January 2014, Welch asked to be laid off, and defendants gave him a pink slip. Doc. #68 at 4–5.

On April 3, 2014, plaintiff Kennedy drove one load of mulch but refused to drive two other loads he was assigned. Doc. #62 at 4–6. One of these loads consisted of 70 yards of premium hemlock mulch; the other consisted of 70 yards of premium bark mulch. *Id.* at 4 (¶ 24); *id.* at 5 (¶ 34). Kennedy believed these loads to be over the legal weight limits, which he told to his supervising manager, Martin Paganini. Doc. #77-7 at 246. Paganini told Kennedy to go home, and Kennedy—believing that he had been fired—never returned to work for the defendants. Doc. #77-7 at 253, 269–74.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-

moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The Surface Transportation Assistance Act ("STAA") protects employees from retaliation by their employers on account of a complaint of a violation of federal safety regulations in the transportation industry. The Act provides in relevant part that a person may not discharge an employee who refuses to operate a vehicle because the operation violates a federal safety regulation. 49 U.S.C. § 31105(a)(1)(B)(i). Plaintiffs allege they were fired when they refused to operate trucks that were loaded in violation of a federal safety regulation limiting truck weights to 80,000 pounds. *See* 23 C.F.R. § 658.17(b). Defendants counter that both plaintiffs freely chose to resign, and they dispute that plaintiffs were forced to drive any truckloads in violation of federal law.

### A. *Supreme Industries as Defendant*

Plaintiffs have sued both Supreme Industries and Supreme Forest Products, and Supreme Industries moves for summary judgment on the ground that it cannot be considered plaintiffs' employer and subject to liability under the STAA. The STAA defines "employer" to mean "a person engaged in a business affecting commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns an employee to operate the vehicle in commerce." 49 U.S.C. § 31101(3).

The record is scant on the issue of who owned the trucks driven by plaintiffs and who assigned employees. But, when the evidence is read in the light most favorable to plaintiffs,

Supreme Industries has failed to show the absence of any genuine fact issue as to its employer status. Paganini testified that the two defendant companies have a close relationship with overlapping assets and organization: the two companies share equipment, employees, and even a dispatcher. Doc. #77-3 at 33-49. Given that the STAA primarily concerns itself with who owns the trucks and who assigns employees to operate them, this closeness between the two companies leaves open remaining fact issues about whether Supreme Industries may be considered to have jointly employed plaintiffs along with Supreme Forest Products for purposes of the STAA.

### B. STAA Claim of Welch

Plaintiff Welch acknowledges that he requested a layoff from Supreme. Doc. #77-2 at 8 (¶ 19); doc. #68 at 4 (¶ 19). Unable to claim that defendants directly terminated him, Welch argues instead that defendants cut his work hours to the point that he was forced to resign and thus he was constructively discharged from his employment. Doc. #77-1 at 32-33.

I do not agree. A plaintiff alleging a constructive discharge generally must show that his employer has "intentionally create[d] a work atmosphere so intolerable that he is forced to quit involuntarily." *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004). Here, Welch's evidence of a reduction in work hours is far too thin to support a jury verdict in his favor. He argues that defendants docked his hours in late 2013, when he began agitating around the issue of overloaded trucks. Doc. #77-1 at 31-33. But the timesheets Welch has submitted do not show that he was particularly disfavored compared to other employees. In between late October and mid-December 2013, Welch was generally working between 40 and 50 hours per week.

Welch argues that he was working less than several other employees, yet the timesheets reflect that he was right in the middle of the pack in terms of hours worked. Doc. #77-17. Even

for the week of December 14, when he worked fewer than 40 hours, he still had more hours than most of the other employees who worked the same number of days. *Id.* The fact that there was one week in which he worked only 33.5 hours—a bit less than other drivers—is not enough to ground a claim that a reduction in work hours effectively forced him to resign his employment. Accordingly, because Welch cannot show a genuine issue of fact that he was terminated by reason of any complaints he made, I will grant defendants' motion for summary judgment as to Welch.[1]

### C. STAA Claim of Kennedy

On April 3, 2014, Kennedy was asked to drive 70 yards of mulch in his truck. According to Kennedy, he knew this load to be overweight based on his experience and the displays on his truck's gauge when the mulch was loaded. Doc. #77-7 at 153–56. Additionally, one of defendants' truck loaders—Walter Whitbeck—testified that in his experience, 70 yards of mulch would put a truck overweight. Doc. #77-10 at 21. Indeed, defendants' own website estimates that a yard of bark mulch weighs "between 800 and 1,000 pounds." Even at the lower end of this weight range and in light of Paganini's deposition testimony that the empty weight of a truck was between 32,000 and 36,000 pounds, 70 yards of mulch would be enough to put many trucks over the 80,000 pound limit. *See* Doc. #77-3 at 106–07.

Defendants contend that this evidence would not be legally sufficient to sustain a jury's conclusion that Kennedy's truck was overweight. I do not agree. Although the record does not contain an actual weight ticket for the truck in question that Kennedy refused to operate, the jury at trial would be fully entitled to consider circumstantial evidence of the type adduced by

---

[1] Although the STAA protects an employee not only from retaliatory discharge but also from retaliatory discipline or other discrimination, Welch's complaint alleges only a retaliatory discharge. Welch has otherwise abandoned his separate claim that defendants violated his rights to continuation of health coverage under COBRA.

Kennedy here. *See, e.g., United States v. Sureff*, 15 F.3d 225, 228–29 (2d Cir. 1994). Here there is testimony from Kennedy, who was an experienced driver, and Whitbeck, who was an experienced truck-loader, as well as calculations based on defendants' own acknowledged and published weight estimates from its own website. Doc. #77-7 at 156; Doc. #77-10 at 21; Doc. #77-3 at 106–07. Moreover, Kennedy has submitted hundreds of weight tickets showing that Supreme's trucks were loaded over the federal limit on other occasions. Doc. #77-14. Even if these tickets were for other products like sand or wood chips, they demonstrate that overloaded trucks were a regular occurrence for defendants' drivers. A reasonable jury could permissibly conclude from the evidence that Kennedy's truck on the day in question in April 2014 was over the legal weight limit of 80,000 pounds.

Defendants next argue that even if Kennedy could prove a violation of the weight regulation, Kennedy has no cause of action under the STAA, because he voluntarily left his employment rather than having been terminated as a result of his complaint about the weight of any truck he was asked to drive. Defendants make much of Kennedy's statement to Paganini that "my employment here just ended," arguing that this statement constituted a resignation. Doc. #62-1 at 5. But Kennedy contends that he reasonably understood his conversation with Paganini to mean that he was terminated as a consequence of his refusal to drive overweight trucks. Doc. #77-7 at 253. "I said that my employment here was over, and Mr. Paganini agreed with what I had just said." *Id.* at 254.

Viewing the facts in the light most favorable to the non-moving party, a jury could conclude that Kennedy's employment was involuntarily terminated, even if Paganini did not use words expressly stating that he was fired. And despite Paganini's promise that defendants would be in touch to handle the dispute through the human resources department, such a meeting never

happened, and Kennedy soon received a pink slip. Doc. #77-7 at 270-73. The evidence would allow a reasonable jury to conclude that Kennedy was fired for his refusal to drive an overweight truck.[2]

Defendants further seek summary judgment against Kennedy on the ground of his failure to mitigate his damages. "Typically, the employer has the burden to demonstrate that suitable work existed in the marketplace and that its former employee made no reasonable effort to find it." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2d Cir. 1998). To demonstrate that suitable work existed in the marketplace, defendants cite Kennedy's own statements. Doc. #63 at 17-18. But Kennedy's affirmation of the statement that there "are a lot of CDL jobs available for someone like you with your experience" came when he was discussing his pre-Supreme job search of more than a decade ago. Doc. #77-7 at 23. In contrast, Kennedy described "looking for work but not having any success" after leaving his work with defendants. *Id.* at 46. Kennedy engaged in online searches, looked in newspapers, submitted job applications, and went to at least ten employers looking for work. *Id.* at 83–89. He found employment for a few months at Tidy Services, but left after Tidy began providing fewer hours of work than it had promised him, his relationship with his boss began going downhill, and he was being given an erratic schedule. *Id.* at 74–75; 65–70. After Tidy, Kennedy resumed filling out applications, using multiple job search sites, and going to several companies for interviews. *Id.* at 119–27. Kennedy "applied for just about every trucking company on the east coast of eastern Carolina within a 50-mile radius." *Id.* at 96.

While he acknowledged that there were job listings he didn't pursue, or occasional offers he did not take, Kennedy stated that he did not find them suitable for a variety of specific

---

[2] For present purposes, I rely solely on the depositions and affidavits of Kennedy and Paganini, without resort to Kennedy's audio recording or transcript.

reasons, including the nature of the work, the amount of travel involved, the lack of benefits, or the pay. *Id.* at 83–89; 97–101; 121–25. Reading these facts as I must in the light most favorable to Kennedy, defendants have failed to demonstrate the absence of any genuine fact issue to warrant a grant of summary judgment as to the issue of mitigation of damages.

## CONCLUSION

Defendants' motion for summary judgment as to plaintiff Kennedy (Doc. #61) is DENIED. Defendants' motion for summary judgment as to plaintiff Welch (Doc. #66) is GRANTED.

It is so ordered.

Dated at New Haven, Connecticut, this 19th day of November 2016.

                                                /s/ *Jeffrey Alker Meyer*
                                                Jeffrey Alker Meyer
                                                United States District Judge