UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL KENNEDY
    *Plaintiff*,

v.

SUPREME FOREST PRODUCTS, INC., *and*
SUPREME INDUSTRIES, INC.,
    *Defendants*.

No. 3:14-cv-01851 (JAM)

## RULING ON PENDING MOTIONS
## RE AUDIO RECORDINGS AND PHOTOGRAPHS

Plaintiff Michael Kennedy has filed suit against defendants Supreme Forest Products, Inc., and Supreme Industries, Inc., alleging that they violated the federal Surface Transportation Assistance Act by terminating his employment on April 3, 2014, for refusing to drive trucks that were loaded with mulch that was over the federal legal weight limit. Defendants have moved to preclude and for sanctions in connection with two types of evidence that plaintiff intends to introduce at trial.

First, defendants seek to preclude certain audio recordings and transcripts of these recordings. While plaintiff was still employed by defendants, he used his smartphone to surreptitiously audio-record a meeting that took place at his place of employment on March 17, 2014, and a later conversation that he had with his supervisors Mark Bellino and Martin Paganini on April 3, 2014. The recordings were copied to a computer, and the computer in turn was used to generate additional copies that were disclosed by plaintiff to defendants during the course of discovery. At some point in time plaintiff deleted the "original" of the recordings that had been stored on his smartphone. Plaintiff intends to introduce at trial certain portions of the two copied audio recordings, and he has also prepared a transcript of these portions of the audio recordings for the jury to review while the audio recordings are played at trial.

1

Second, defendants seek to preclude two photographs that plaintiff allegedly took on his smartphone. On the day before jury selection and long after discovery had closed in this case, plaintiff advised defendants of his intent to use at trial these two newly disclosed photographs that he allegedly took while working for defendants in 2014. Both photographs purportedly show the air suspension gauge of plaintiff's truck and would support plaintiff's claim that the truck was loaded above the legal limit, including on April 3, 2014, when plaintiff was allegedly terminated from his employment.

In light of this factual background, I will consider each of defendants' arguments in turn.

### *Objection to Audio Recordings Based on Spoliation*

Defendants argue that plaintiff should be sanctioned for his failure to produce the original versions of his workplace audio recordings and the cell phone that he used for recording. Doc. #140. I do not agree for substantially the reasons set forth in plaintiff's opposition memorandum. Doc. #148. Although plaintiff should have preserved the recordings on his smartphone, I do not conclude that he acted in bad faith when he deleted the recordings. I further conclude that sanctions are not appropriate in light of the fact that defendants did not attentively pursue access to the smartphone and the originals as stored on the smartphone during the course of the discovery period and depositions in this case. *See generally West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (discussing district court authority and discretion to impose sanctions for spoliation of evidence).

A motion for sanctions after the close of discovery should not be brought as a substitute for defendants' attentive pursuit of evidence during discovery. If defendants had timely and fully pursued access to the smartphone and the original recordings during the discovery period, I might well have concluded that plaintiff's deletion of the original recordings should warrant

sanctions. But that is not what happened here, and there is no indication that the copies of the recordings produced by plaintiff have been materially altered or are otherwise not the same as the originals recorded by plaintiff. Although defendants may fully cross-examine plaintiff about his deletion of the recordings and argue at closings that plaintiff should have preserved the original recordings, the Court will not issue an adverse inference instruction in the absence of further evidence that plaintiff altered or destroyed the evidence with intent to impede its availability for trial.

### *Objection to Audio Recordings Based on Authentication*

Defendants argue that the copy of the audio recordings should be precluded on grounds that they are not authentic. Doc. #105. A party who seeks to introduce evidence at trial must, of course, bear the burden to show that the evidence is what its proponent claims it to be. Rule 901(a) of the Federal Rules of Evidence provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

As the Second Circuit has observed, Rule 901 "does not definitively establish the nature or quantum of proof that is required preliminarily to authenticate an item of evidence." *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014). Still, "the bar for authentication of evidence is not particularly high," and "the proponent need not rule out all possibilities inconsistent with authenticity," but need only adduce "sufficient proof . . . so that a reasonable juror could find in favor of authenticity or identification." *Ibid.* And of course, once an item of evidence is "authenticated" as required under Rule 901, this "merely renders evidence admissible, leaving the issue of its ultimate reliability to the jury," for which "the opposing party remains free to

challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning," with all such challenges going to the weight of the evidence rather than its initial admissibility. *Ibid.*[1]

Having listened *in camera* to those portions of the recordings that plaintiff intends to use at trial, I cannot conclude that plaintiff will necessarily fail to establish that the recordings are authentic pursuant to Rule 901. Defendants have done nothing to show that plaintiff has materially altered the electronic recordings in any way. Provided that plaintiff testifies as anticipated and in a manner that the Court decides is credible that the portions of the recordings he intends to introduce at trial are indeed a fair and accurate representations of meetings or conversations for which he was present, the Court will likely overrule any authenticity objection under Rule 901.

### *Objection to Audio Recordings Based on "Best Evidence" Rule*

Defendants further argue that the "best evidence" rule precludes admission of the copies made by plaintiff from the recordings he made on his smartphone. It is true that Rule 1002 of the Federal Rules of Evidence provides that "[a]n original writing, recording, or photograph is required to prove its content unless these rules or a federal statute provides otherwise." But defendants' argument overlooks another evidentiary rule—Rule 1004(a) of the Federal Rules of Evidence—that excuses the "best evidence" requirement if "[a]ll the originals are lost or destroyed," unless the proponent lost or destroyed them in bad faith. *See, e.g.*, *United States v.*

---

[1] Defendants contend that the authenticity of audio recordings must be established by clear and convincing evidence. *See* Doc. #105-1 at 2 (quoting *Penguin Books U.S.A., Inc. v. New Christian Church Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 263 (S.D.N.Y. 2003)). Later precedent suggests that the clear-and-convincing standard possibly may not apply in the civil context. *See S.E.C. v. Badian*, 822 F. Supp. 2d 352, 364 (S.D.N.Y. 2011), *amended on reconsideration in part*, 2012 WL 2354458 (S.D.N.Y. 2012). I will apply the clear-and-convincing standard in light of the textual requirements of Rule 901. *See also* Clifford S. Fishman, *Recordings, Transcripts, and Translations as Evidence*, 81 Wash. L. Rev. 473, 479 & n.16 (2006) (noting applicable standard under Rule 901 and tension within law of the Second Circuit concerning the governing standard of proof).

*Whittingham*, 346 Fed. Appx. 683, 685 (2d Cir. 2009) (affirming admission of photographs derived from surveillance video notwithstanding non-bad-faith destruction of the underlying video); *see also* Fed. R. Evid. 1003 ("A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate.").

### *Objection to Audio Recordings Based on Foundation and Hearsay*

Defendants further object on foundation and hearsay grounds to several of the specific statements made by plaintiff and by one or more "unidentified male" speakers in the audio recordings. Doc. #145. I will overrule any hearsay objection, because the hearsay rule does not preclude the admission of statements made during a recorded conversation that are not offered for the truth of what was said and also because the statements made by plaintiff and his co-workers are important to a context for and understanding of the fully admissible statements made by Martin Paganani and Mark Bellino in their capacities as company managers (which statements are subject to a hearsay exception as statements of a party opponent, Fed. R. Evid. 801(d)(2)(A)). *See, e.g.*, *United States v. Sorrentino*, 72 F.3d 294, 298 (2d Cir. 1995), *overruled on other grounds by United States v. Abad*, 514 F.3d 271 (2d Cir. 2008); *Umar Oriental Rugs, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2008 WL 216926, at *7 n.6 (E.D.N.Y. 2008). To ensure that the jury does not consider any statement for an improper purpose, the Court intends to address this issue as part of a limiting instruction that it will furnish the jury just prior to the playing of the audio recordings (and to reinforce these limitations in its final jury instructions).

Defendants also object that certain statements made by plaintiff and an "unidentified male" are inadmissible expert testimony about the law. I do not agree. These statements and references to the law are highly significant for a non-hearsay and non-expert-opinion basis to

understanding the response by defendants' representatives when advised that defendants' operations may be in violation of the law. Accordingly, I will allow these statements but subject again to an appropriate limiting instruction.

*Objection to Use of Transcripts with Audio Recordings*

Defendants next object to the admission of the transcripts prepared by plaintiff of certain portions of the audio recordings that plaintiff intends to introduce at trial. With two exceptions, I conclude that plaintiff's proposed interpretations of the conversations are at least arguably correct.[2] It is well-established that a transcript of an audio recording is admissible for limited demonstrative purposes at trial provided that the opposing party has an opportunity to introduce a competing transcript if there is disagreement concerning the content of certain statements. *See United States v. Ben-Shimon*, 249 F.3d 98, 101 (2d Cir. 2001) (*per curiam*). "Disagreements over accuracy notwithstanding, a district court's admission of a properly authenticated transcript is not reversible error if the defendant is made aware that he is free to submit a competing transcript, and does not do so." *United States v. Gay*, 85 Fed. Appx. 794, 795 (2d Cir. 2004). Again, I will issue a limiting instruction concerning the jury's consideration of transcripts.

*Limiting Instruction to Accompany Audio Recordings and Transcripts*

Subject to further input from counsel and in light of my rulings above, the Court intends to issue the following limiting instruction prior to the playing of the audio recordings:

> Members of the jury, you will hear in this case certain audio recordings and review certain transcripts of these recordings. It is important that you understand and follow three limitations that are placed on your consideration of such evidence.

---

[2] First, the beginning of the transcript for the recording of April 3, 2014, reflects a brief interchange between plaintiff and "Mark" that is not on the recording submitted to the Court. *See* Doc. #77-11 at 3 (lines 2-6) ("MR. KENNEDY: Hey, Mark, are you in the office? MARK: Yeah. MR. KENNEDY: Okay. Can you come out here for a minute?"). Because this interchange does not appear on the recording itself, plaintiff shall redact this interchange from the transcript. Second, the transcript contains an alleged statement by Paganini that the Court was unable to hear. *See* Doc. #77-11 at 6 (lines 17-18) ("MR. PAGANINI: "I'm sorry you feel that way. Yup."). Plaintiff shall redact this statement from the transcript.

6

First, the rules of evidence generally forbid the introduction of so-called "hearsay" evidence. What is "hearsay"? A hearsay statement is defined to mean an out-of-court statement made by someone if that statement is offered to prove a certain fact to be true. Of course, all of the statements that you will hear on any audio recording occurred out of court.

Now there are exceptions to this rule that prohibits hearsay, and one exception is for any statements that are made by one's opponent at trial. Either party is permitted to introduce as evidence in a case the out-of-court statements that were made by the opposing party. If the opponent is a corporation as in this case, then a statement by a manager of the company within the scope of employment is considered to be a statement of the party.

As you listen to these recordings, you will hear statements that plaintiff claims were made by himself, by other co-workers who were not managers at the defendant companies, and by one or more managers including Martin Paganani and Mark Bellino. It is for you to decide who it is that is speaking on the recordings. For any statements that you find were made by Mr. Paganini or Mr. Bellino within the scope of their employment, you may consider such statements for the truth of what they say. But you may not consider as true any statement made by plaintiff or his other non-manager co-workers. Those statements by plaintiff and his co-workers should be evaluated by you solely as background context for your understanding and evaluation of any statements made by Mr. Paganini or Mr. Bellino.

Second, you may hear certain statements on the audio recordings about what the law requires in terms of truckload weights. You should not accept these statements as necessarily true statements of the law, because it is the Court that will advise you in its final jury instructions just what it is that the law required. As I just noted before, you should consider any statements by plaintiff or by his non-managerial co-workers only for the context that they provide for your understanding of any statements made by managerial employees of the defendant companies.

Third, you will have transcripts prepared by the parties to review while you listen to the recordings. These transcripts are meant solely to be aids to your interpretation while you listen to the recordings. Unlike the other documents that have or will be introduced as evidence in this case, the transcripts will not accompany you to the jury room for your deliberations at the end of the case. That is because the transcripts themselves are not evidence—they are solely what the parties claim are the people whose voices are heard on the recordings and what it is the parties claim that they said to the extent that it may be possible to hear what was said. It is for you alone to decide if the transcripts are correct in terms of the speakers they identify and in terms of what was said and what inferences to draw from anything that you hear on the audio recordings.

So those are the three limitations that apply to your consideration of the audio recordings and of the transcripts. In my final written instructions that you will receive at

the end of the case, I will reiterate these limitations to ensure that you are aware of them
and follow them when you begin your deliberations in this case.

The Court will consider any suggestions made by counsel concerning the wording of this proposed limiting instruction.

### *Objection to Photographs Based on Late Disclosure*

Defendants move for sanctions as a result of plaintiff's late disclosure of the photographs that he took of his truck's suspension gauge. Plaintiff does not contest that the photographs were within the scope of defendants' prior discovery requests and that he failed to timely disclose them. For example, defendants requested from plaintiff during discovery "any and all documents relating to Plaintiff's allegation that Defendants began loading the Defendants' trucks with larger loads and denser mulch that regularly exceeded 80,000 pounds." Doc. #140-2 at 7.

Rule 37 of the Federal Rules of Civil Procedure authorizes the Court to impose a broad range of sanctions for a party's failure to comply with discovery requests. "A district court has wide discretion to impose sanctions, including severe sanctions," under Rule 37. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006).

In determining what sanctions, if any, to impose for a violation of a discovery requirement that is discovered on the eve of trial, a court should consider (1) the party's explanation for the failure to comply with the discovery requirement; (2) the importance of the evidence in question; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new evidence; and (4) the possibility of a continuance. *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

I have considered each of these factors, and I conclude that an appropriate sanction is preclusion of the photographs (and any reference at all to their existence by plaintiff or his counsel unless defendants open the door to the receipt of this evidence in which case plaintiff

8

must seek advance permission of the Court to proceed). Plaintiff has offered no good reason for his failure to have disclosed the photographs at an earlier time. It is evident from the fact that he took the photographs (as well as engaged in covert audio recordings) that plaintiff was attentive to gathering evidence against defendants prior to having filed this lawsuit, and this compounds my concern about why the photographs were not timely disclosed. Whatever the reason for plaintiff's failure, the photographs were disclosed too late in order for defendants to have a fair and adequate opportunity to defend against them at trial. It would not be appropriate to grant a continuance of trial, because this case is several years old, the parties have long prepared for trial, and defendants should not shoulder a burden from plaintiff's failure until the day before jury selection to comply with a basic discovery requirement.

In view of my decision to preclude any evidence of the late-disclosed photographs at trial, I will deny defendants' further request that I dismiss plaintiff's case in its entirety. Dismissal would not be an appropriate and proportional remedy for plaintiff's failure to disclose the photographs, especially considering that preclusion of the evidence adequately redresses any prejudice to defendants from late disclosure.

## CONCLUSION

Defendants' motions *in limine* to exclude the audio recordings (Doc. #105 and #145) are DENIED. Defendants' motion for sanctions against plaintiff (Doc. #140) is GRANTED in part and DENIED in part. Plaintiff shall not be permitted to use or reference the late-disclosed photographs of his truck's suspension gauge. The Court otherwise declines to enter an order to require plaintiff to pay attorneys fees and costs.

It is so ordered.

Dated at New Haven, Connecticut, this 22d day of May 2017.

                                                      **/s/** *Jeffrey Alker Meyer*
                                                     Jeffrey Alker Meyer
                                                     United States District Judge